JUDGE TORRES

13 CV 6685

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYNELL SMITH and MARJORIE ARNIOTIS,

        Plaintiffs,

– against –

THE CITY OF NEW YORK; NEW YORK CITY POLICE COMMISSIONER RAYMOND KELLY, in his individual and official capacity; NEW YORK CITY POLICE OFFICER JOHN SMYTH (Shield # 09118), in his individual capacity; NEW YORK CITY POLICE OFFICER FREDERIC WINTER (Shield # 021252), in his individual capacity; NEW YORK CITY POLICE OFFICERS, JOHN DOES ##1-3, in their individual capacities; PROPERTYROOM.COM, INC.; and COPART OF CONNECTICUT, INC.,

        Defendants.

13 Civ. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**



## INTRODUCTION

1.     This is a civil rights action brought by Plaintiffs RAYNELL SMITH and MARJORIE ARNIOTIS ("Plaintiffs"), pursuant to 42 U.S.C. § 1983, seeking relief for Defendants' violation of their rights under the Fourteenth Amendment to the United States Constitution, as well as the Constitution and laws of the State of New York.

2.     Plaintiffs' claims arise from the unconstitutional sale of their motor vehicles without the required notice or process, according to a policy or practice enacted by Defendant The City of New York and the other Defendants, each acting under color of law.

3.     In particular, after Plaintiffs' vehicles were seized by the New York City Police Department (the "NYPD"), Defendants (a) failed to provide Plaintiffs with constitutionally required notice of the procedures by which they could reclaim their property, and then (b) sold Plaintiffs' vehicles to third parties at auction without any notice to Plaintiffs. Defendants have

failed to provide Plaintiffs with any compensation for the unlawful sale of Plaintiffs' vehicles, which were neither abandoned nor the subject of forfeiture proceedings.

4. The Defendants in this action, THE CITY OF NEW YORK (the "City"), New York City Police Commissioner RAYMOND KELLY, NYPD Officer JOHN SMYTH, NYPD Officer FREDERIC WINTER, NYPD Officer JOHN DOE #1, NYPD Officer JOHN DOE #2, NYPD Officer JOHN DOE #3, COPART OF CONNECTICUT, INC., and PROPERTYROOM.COM, have at all times relevant herein implemented, enforced, encouraged, and sanctioned, under color of law, an established policy of failing to give adequate notice of the procedures for recovering individuals' property from the City's custody; affirmatively misleading individuals as to those procedures; and then selling individuals' property without notice or lawful basis, acts that are, both individually and collectively in violation of the Fourteenth Amendment to the United States Constitution and other provisions of law.

5. Multiple decisions of this Court and of the United States Court of Appeals for the Second Circuit, stretching back more than forty-one years, have recognized the unconstitutional conduct of the City, its agents, and those acting under color of law in this regard. Plaintiffs are only among the latest in a long line of those damaged by the City's unlawful conduct in connection with the seizure and sale of private, personal property.

6. Defendants' unconstitutional policies are the proximate cause of the loss of Plaintiffs' property, as detailed herein.

7. Plaintiffs seek compensatory damages, punitive damages, declaratory relief, and an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(3) and (4) because this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

9. Jurisdiction is also proper under 28 U.S.C. §§ 2201 and 2202.

10. Plaintiffs' state-law claims are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy, making jurisdiction proper under 28 U.S.C. § 1367(a).

11.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES
### Plaintiffs

12.     Plaintiff RAYNELL SMITH ("Mr. Smith"), is a lawful permanent resident of the United States, and was at all relevant times herein a resident of the County of Queens, State of New York, and of full age. At all times relevant herein, Mr. Smith was the owner—and person entitled to the possession—of a blue 1999 Saab bearing Vehicle Identification Number YS3DF78N9X7000081.

13.     Plaintiff MARJORIE ARNIOTIS ("Ms. Arniotis") is a lawful permanent resident of the United States, and was at all relevant times herein a resident of the County of Queens, State of New York, and of full age. At all times relevant herein, Ms. Arniotis was the owner—and person entitled to the possession—of a 2003 Honda Civic bearing Vehicle Identification Number 2HGES16693H512326.

### Defendants

14.     Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the NYPD, which acts as the City's instrumentality in the area of law enforcement. The City is legally responsible for the conduct, actions and unlawful omissions of the NYPD.

15.     Defendant New York City Police Commissioner RAYMOND KELLY ("Commissioner Kelly") is and was at all times relevant herein, the Police Commissioner for the City, and is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD, a municipal agency of the City, whether implemented directly by officers of the NYPD or delegated by the NYPD to private entities acting pursuant to contracts with the NYPD. Commissioner Kelly is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling, compliance, and control of the

police officers under his command who are or were employed by the NYPD, including Defendants named herein. Commissioner Kelly is sued individually and in his official capacity.

16. Defendant John Smyth is a New York City Police Officer (Shield # 09118) ("Officer Smyth"), who is, or at all times relevant herein was, assigned to the 52nd Precinct in the Bronx. Officer Smyth is sued in his individual capacity.

17. Defendant Frederic Winter is a New York City Police Officer (Shield # 021252) ("Officer Winter"), who is, or at all time relevant herein was, assigned to the 48th Precinct in the Bronx. Officer Winter is sued in his individual capacity.

18. Defendant John Doe #1 is a New York City Police Officer who is, or at all times relevant herein was, assigned to the 52nd Precinct in the Bronx. John Doe #1 is sued in his individual capacity.

19. Defendant John Doe #2 is a New York City Police Officer who is, or at all times relevant herein was, the Property Clerk of the 52nd Precinct. John Doe #2 is sued in his individual capacity.

20. Defendant John Doe #3 is a New York City Police Officer who is, or at all relevant times herein was, the Property Clerk of the 48th Precinct. John Doe #3 is sued in his individual capacity.

21. Defendant PROPERTYROOM.COM, Inc. ("PropertyRoom") is a Delaware corporation licensed to do business in New York. PropertyRoom's primary business is the online auction of items seized by law enforcement agencies.

22. Defendant COPART OF CONNECTICUT, INC. ("Copart") is a Connecticut corporation licensed to do business in New York. Copart's primary business is the online auction of used cars, a significant proportion of which are placed in Copart's hands by law enforcement agencies. On information and belief, Copart sells more than one million used cars per year and operates more than 150 used car facilities in the United States, the United Kingdom, Canada and the United Arab Emirates. Copart is a NASDAQ-listed company, ticker symbol "CPRT."

23. On information and belief, since 2009 PropertyRoom has contracted with the City to store and sell at auction vehicles seized by the NYPD. On information and belief, Copart is

PropertyRoom's subcontractor and agent for the implementation of all aspects of PropertyRoom's work for the City, such that PropertyRoom may be held liable at law for Copart's unlawful actions and omissions in connection with that work. The relationship among Defendants PropertyRoom, Copart, and the NYPD is established through an arrangement evocatively termed the "Titanium Program" and has, on information and belief, involved the sale at auction of approximately of 20,000 cars since 2009.

24. On information and belief, the NYPD, PropertyRoom, and Copart manage the Titanium Program through a purportedly sophisticated computer database that permits the NYPD, PropertyRoom, and Copart to exchange information rapidly on the inventory of vehicles held or slated for auction pursuant to the Titanium Program. The City realizes, on information and belief, approximately $6 million dollars a year in revenue as a result of the Titanium Program.

## THE UNLAWFUL SEIZURES

### Plaintiff Smith

25. On May 26, 2012, Mr. Smith was driving his 1999 Saab on East Bedford Park Boulevard in the Bronx, when, at approximately 9:55 PM, he was pulled over by Defendant NYPD Officer John Smyth.

26. Mr. Smith had recently purchased his vehicle. Officer Smyth alleged that the expiration date of the temporary New Jersey license plate affixed to Mr. Smith's vehicle had been altered from the original date by ten days. Officer Smyth arrested Mr. Smith for Criminal Possession of a Forged Instrument (New York Penal Law § 170.20).

27. Officer Smyth seized Mr. Smith's vehicle contemporaneously with Mr. Smith's arrest. At this time, Officer Smyth failed to give Mr. Smith the required Vehicle Seizure Form that would have acknowledged the seizure of Mr. Smith's vehicle and provided at least some notice to Mr. Smith regarding the procedures he could follow to recover his property. Such a Vehicle Seizure Form is required as a matter of Due Process pursuant to orders of this Court binding on the City. *See* Third Amended Order & Judgment, *Krimstock v. Kelly*, No. 99 Civ. 12041 (HB) (S.D.N.Y. Oct. 1, 2007) (the "*Krimstock* Order"). *See also* Order, *McClendon v. Rosetti*, No. 70 Civ. 3851 (July 15, 1974) (Lasker, J.), reprinted in *Butler v. Castro*, 896 F. 2d

698, 701 n. 1 (2d Cir. 1990) (requiring police to provide arrestees with a voucher giving notice of the means of recovering property seized during arrest).

28. Mr. Smith was then taken to the 52nd Precinct, located at 3016 Webster Ave., Bronx, New York, 10467.

29. Upon his release from custody, but before leaving the 52nd Precinct, Mr. Smith asked Defendant John Doe #1 about the status of his vehicle. John Doe #1 told Mr. Smith that his vehicle was being held as "arrest evidence." Like Defendant Officer Smyth, however, Defendant John Doe #1 failed to provide Mr. Smith with a Vehicle Seizure Form, or with any other information concerning Mr. Smith's ability to seek recovery of his vehicle, as required by the *Krimstock* Order.

30. Upon information and belief, Defendant John Doe #2 was at all relevant times the Property Clerk of the 52nd Precinct, and is responsible for the care, custody, and records maintenance of all property seized or kept for safekeeping pursuant to an arrest processed in the 52nd Precinct.

31. As a matter of law and NYPD procedure (although, on information and belief, Defendants routinely ignore the procedure), Defendants Smyth, John Doe #1, and John Doe #2, at the time of the arrest and seizure, were required to provide Mr. Smith with personal written notice of the procedures by which he could regain possession of his vehicle. Defendants were likewise required to provide follow-up notice by mail.

32. Neither on the night of his arrest nor in the course of subsequent in-person inquiries at the 52nd Precinct did any of the Defendants provide Mr. Smith with the Vehicle Seizure Form and notice to which he was entitled. This failure constituted a denial of Mr. Smith's due process rights.

33. On June 14, 2012, although the criminal charges against Mr. Smith were still pending, the NYPD changed the classification of Mr. Smith's vehicle from "arrest evidence" to "safekeeping."

34. Defendants never gave Mr. Smith notice of the NYPD's change of the classification of his vehicle from "arrest evidence" to "safekeeping," despite the fact that this

change in classification nominally and without lawful justification placed Mr. Smith's vehicle outside the scope of the safeguards imposed by the *Krimstock* Order.

35. On June 26, 2012, a mere one month after the NYPD's seizure of Mr. Smith's vehicle, the NYPD released photos of Mr. Smith's vehicle to Defendant Copart. *Three days later*, on June 29, 2012, Copart and the NYPD approved Mr. Smith's vehicle for auction.

36. At no point did any Defendant give Mr. Smith notice that his vehicle – as far as he knew still being held as "arrest evidence" – could be sold at auction.

37. On information and belief, Copart subsequently staged Mr. Smith's vehicle for auction over its website, www.copart.com.

38. Mr. Smith never received notice from any of the Defendants regarding the NYPD's transfer of his vehicle to Copart or of Copart's staging of his vehicle for auction.

39. On July 6, 2012, a non-attorney case worker from The Bronx Defenders acting on behalf of Mr. Smith attempted to contact Defendant John Doe #2, to obtain information regarding the status of Mr. Smith's vehicle. Mr. Smith's representative left a voice message for Defendant John Doe #2. Her call was never returned.

40. That same day, only 41 days after the NYPD's seizure of Mr. Smith's vehicle, Copart sold Mr. Smith's vehicle at auction to Car Mech Auto Sales Inc. for $900 (Order No. 10001027). At this time, the criminal charges against Mr. Smith were still pending.

41. On July 10, 2012, a non-attorney case worker from The Bronx Defenders again contacted the 52nd Precinct on Mr. Smith's behalf seeking information on the status of Mr. Smith's vehicle. Unknown NYPD officers refused to provide any information over the phone. Mr. Smith accordingly went to the 52nd Precinct in person, seeking information on the status of his vehicle.

42. Following Mr. Smith's renewed inquiries, NYPD officers admitted that there had been a "mistake" in that documentation giving notice to Mr. Smith of the procedures to pursue in seeking to recover his vehicle had not been provided to him. Only then did NYPD officers at the 52nd Precinct provide Mr. Smith with a partial receipt for his vehicle. This documentation was incomplete because it did not contain instructions as to how Mr. Smith might seek to recover his

vehicle. But even a complete Vehicle Seizure Form would not have helped Mr. Smith, whose vehicle had already been sold.

43. Defendants' failure to provide Mr. Smith with such notice, and to do so in a timely fashion, directly and proximately caused the permanent loss of his vehicle. Had Mr. Smith received proper notice in a timely manner, he would have been informed of his right to make a demand upon the NYPD Property Clerk for return of his property and, if the City refused to return his vehicle, to a *Krimstock* hearing. Mr. Smith would have prevailed at such a hearing.

44. All charges against Mr. Smith were dismissed on January 15, 2013.

45. Mr. Smith served a Notice of Claim upon the Comptroller of the City of New York on July 18, 2012. The City has not replied to Mr. Smith's Notice of Claim. Defendants have offered no compensation for the unlawful sale of Mr. Smith's vehicle.

46. As a result of all of the acts alleged herein, Mr. Smith has suffered the forfeiture of his vehicle without the notice and opportunity to be heard to which he was entitled as a matter of Due Process.

### **Plaintiff Arniotis**

47. On June 12, 2011, Mr. Peter Ali, Ms. Arniotis' son, was driving Ms. Arniotis's vehicle, a 2003 Honda Civic, when he was arrested by Defendant NYPD Officer Frederic Winter.

48. Upon arresting Mr. Ali, Officer Winter did not provide Mr. Ali with a Vehicle Seizure Form for the vehicle Mr. Ali was driving and which was seized during the arrest. As of the time of his arrest of Mr. Ali, Officer Winter knew or should have known that Ms. Arniotis was the owner of the vehicle seized on June 12, 2011. Officer Winter nevertheless failed to take reasonable steps to ensure that Ms. Arniotis received proper notice of the seizure of her vehicle and of the procedures by which she might regain it.

49. Mr. Ali was processed at the 48th Precinct, located at 450 Cross Bronx Expressway, Bronx, New York, 10457.

50. Upon information and belief, Defendant John Doe #3 was at all relevant times the Property Clerk of the 48th Precinct, and is responsible for the care and custody and records

maintenance of all property seized or kept for safekeeping pursuant to an arrest processed in the 48th Precinct.

51. As a matter of law and NYPD procedure (although, on information and belief, Defendants routinely ignore the procedure), Defendant John Doe #3, was required to provide Ms. Arniotis with personal written notice of the procedures by which she could regain possession of her vehicle within five days of its seizure.

52. Neither the Defendants nor anyone acting on their behalf gave Ms. Arniotis notice of the status of her vehicle, or of the procedures she might follow to regain possession of her vehicle. Ms. Arniotis was entitled to this notice as a matter of Due Process.

53. After more than six months, during which Defendants failed to give Ms. Arniotis notice of the status of her vehicle or the procedures by which she could reclaim it, a non-attorney case worker from The Bronx Defenders acting on behalf of Ms. Arniotis contacted the NYPD regarding Ms. Arniotis' vehicle. The NYPD informed Ms. Arniotis' representative that the vehicle had initially been classified as held for "safekeeping," and subsequently re-categorized as "arrest evidence."

54. On January 19, 2012, NYPD Officer John Vargas, Jr., on behalf of the NYPD, signed a release form authorizing the return of Ms. Arniotis' vehicle ("NYPD Release").

55. That same day, representatives of the NYPD informed Ms. Arniotis that the license plates had been removed from her vehicle subsequent to its seizure and misplaced. NYPD representatives refused to release Ms. Arniotis's vehicle until she acquired new license plates.

56. Shortly before Ms. Arniotis obtained the NYPD release, the NYPD had, in fact, transferred Ms. Arniotis' vehicle to Copart, which held Ms. Arniotis' vehicle at its Long Island storage facility. By virtue of the database to which Copart has access and otherwise, Copart knew or should have known of the NYPD Release.

57. On March 6, 2012, a non-attorney case worker from The Bronx Defenders acting on Ms. Arniotis's behalf, having obtained new license plates from the New York State Department of Motor Vehicles, contacted the NYPD regarding the return of Ms. Arniotis'

9

vehicle. NYPD representatives then revealed that Ms. Arniotis' vehicle had been auctioned by Copart on February 28, 2012.

58. Defendants' failure to provide Ms. Arniotis with notice directly and proximately caused the permanent loss of her vehicle. Had Ms. Arniotis received proper notice, she would have been informed of her right to make a demand upon the NYPD Property Clerk for the return of her vehicle and, if the City refused, to a hearing. Ms. Arniotis would have prevailed at such a hearing.

59. Ms. Arniotis served a Notice of Claim upon the Comptroller of the City of New York on April 9, 2012. The City has not replied to Ms. Arniotis' Notice of Claim. Defendants have offered no compensation for the unlawful sale of Ms. Arniotis' vehicle.

60. As a result of all of the acts alleged herein, Ms. Arniotis has suffered the forfeiture of her vehicle without the notice and opportunity to be heard to which she was entitled as a matter of Due Process.

### Defendants' Unconstitutional Practices and Policies

61. Plaintiffs' factual allegations do not describe isolated or unusual incidents.

62. For more than forty years, state and federal courts have tried to hold the City constitutionally accountable for its stewardship of seized property, with limited success.

63. Even though federal courts have mandated extensive judicial safeguards designed to protect individuals' constitutional rights in property, and especially vehicles, seized by the NYPD, these procedures are worthless if claimants are unaware of them.

64. On information and belief, the City has an established practice of routinely failing to provide mandatory notice of these procedures, in derogation of the *Krimstock* Order and other judicial commands.

65. This practice is manifest from the high number of claims over many years before federal and state courts, as well as before administrative tribunals, asserting—frequently without contradiction—the City's utter failure to provide constitutionally required notice. The conduct of Defendants Officer Smyth, John Doe #1, and John Doe #2 during and immediately after Mr.

Smith's arrest is typical of the City's and the NYPD's failure to honor its duty to provide property owners with notice of the procedures for recovering their seized property.

66. On information and belief, the City has failed to implement adequate training and internal controls at the NYPD to assure timely and proper notice to the owners of seized property of the procedures by which they may seek its recovery. The City and Defendant Commissioner Kelly have acted with deliberate indifference to their constitutional duties in connection with the City's stewardship of seized property.

67. The City's routine failure to provide written notice of how to recover seized vehicles pursuant to the *Krimstock* Order denies affected owners constitutionally adequate notice regarding the procedures for recovering their property. Courts have repeatedly held that the City has an established procedure of misleading vehicle owners who do not receive such notice as to how they may recover their property.

68. Defendants' arbitrary re-classification of Mr. Smith's vehicle as being held for "safekeeping," and Defendants' sale of Ms. Arniotis's vehicle at auction, *after* Ms. Arniotis obtained a "release" of her property from an NYPD official are direct manifestations of a previously-recognized policy to fail to manage seized property.

69. On information and belief, the City's constitutionally defective handling of seized vehicles is exacerbated by the outsourcing of a substantial role in the storage and sale of such vehicles to for-profit companies, namely Defendants PropertyRoom and Copart, through the Titanium Program, and the City's subsequent failure to monitor, manage, and supervise PropertyRoom and Copart.

70. Counsel for Mr. Smith and Ms. Arniotis submitted a request to the NYPD and the New York City Comptroller pursuant to the New York State Freedom of Information Law ("FOIL") seeking, *inter alia*, "the procedures followed and/or required to be followed *by Copart* in connection with the seizure, towing, storage, sale or other disposition of motor vehicles seized by the City, including, but not limited to, the provision of notice to vehicle owners, conduct or participation in hearings, and response to applications for the recovery of seized motor vehicles" (emphasis added). The City, after five months had passed, was unable to locate a single responsive record.

71. On information and belief, such procedures do not exist. Having delegated much of the work of its management of seized vehicles to outside contractors, and thus delegated adherence to the Due Process standards established by *Krimstock* and elsewhere, the City has, on information and belief, neither arranged for these contractors to perform its notice obligations or improved its own compliance with them. Such a state of affairs is constitutionally unacceptable.

### JURY DEMAND

72. Plaintiffs demand trial by jury as to all of their claims in this action.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
### DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983
### (against all Defendants)

73. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

74. At all times material to this Complaint, Defendants acting under color of law have implemented, encouraged, sanctioned, or exercised deliberate indifference towards, a policy, practice and/or custom of:

   a. routinely failing to provide timely and effective notice of the proper procedures by which individuals whose vehicles are seized by the NYPD may seek to recover their property;

   b. misleading claimants who are not given notice of the procedures by which they may recover vehicles seized by the NYPD; and

   c. selling seized vehicles at auction without lawful basis or title while the vehicles' rightful owners are unable effectively to assert their claims to such vehicles because of Defendants' failure to provide them with constitutionally adequate notice of the procedures for doing so.

75. On information and belief, this policy, practice and/or custom reflects, without limitation: (a) Defendant City's and Defendant Commissioner Kelly's failure properly to screen, train, supervise, discipline, transfer, counsel and/or otherwise control NYPD officers engaged in

the seizure of vehicles; (b) Defendant City's and Defendant Commissioner Kelly's failure properly to screen, train, supervise, discipline, transfer, counsel and/or otherwise control NYPD Property Clerks; (c) Defendant City's and Defendant Commissioner Kelly's failure to use reasonable care in selecting contractors to store and sell seized vehicles at auction for the City; and (d) the failure properly to supervise such contractors.

76. On information and belief, the NYPD does not require its vehicle storage and auctioneer contractors, Defendants PropertyRoom and Copart, to provide any notice of the status of seized property in the custody of such contractors, or of the pending auction of such property, to its owners.

77. The foregoing policies proximately caused Plaintiffs to be unlawfully deprived of their property without Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution and to suffer loss and injury.

### SECOND CLAIM FOR RELIEF (Mr. Smith)
### DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983
### (against Defendants Officer Smyth, John Doe #1, and John Doe #2)

78. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

79. The conduct of Defendants Officer Smyth, John Doe #1, and John Doe #2, acting under color of law and pursuant to unlawful NYPD practice, in seizing and continuing to hold Mr. Smith's vehicle without providing notice of the procedures Mr. Smith could follow to seek to regain possession of his vehicle, was without lawful justification, and in violation of Mr. Smith's constitutional right to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

80. The conduct of Defendants Officer Smyth, John Doe #1, and John Doe #2 proximately caused Mr. Smith to be unlawfully deprived of his property and to suffer loss and injury.

### THIRD CLAIM FOR RELIEF (Ms. Arniotis)
### DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983

(against Defendants Officer Winter and John Doe #3)

81. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

82. The conduct of Defendants Officer Winter and John Doe #3, acting under color of law and pursuant to unlawful NYPD practice, in seizing and continuing to hold Ms. Arniotis' vehicle without providing notice of the procedures Ms. Arniotis could follow to regain possession of her vehicle, was without lawful justification and in violation of Ms. Arniotis' constitutional right to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

83. The conduct of Defendants Officer Winter and John Doe #3 proximately caused Ms. Arniotis to be unlawfully deprived of her property and to suffer loss and injury.

## FOURTH CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
## DEPRIVATION OF RIGHTS UNDER ARTICLE I OF THE CONSTITUTION OF THE STATE OF NEW YORK
(against all Defendants)

84. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

85. The conduct of Defendants, acting under color of law, in seizing Plaintiffs' vehicles without providing notice of the procedures Plaintiffs could follow to regain possession of their vehicles, and in subsequently selling Plaintiffs' vehicles at auction without notice, lawful basis or title, was without lawful justification, and in violation of Plaintiffs' Due Process rights under Article I of the Constitution of the State of New York.

86. Defendants' conduct proximately caused Plaintiffs to be unlawfully deprived of their property and to suffer loss and injury.

## FIFTH CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING
(against Defendants City and Commissioner Kelly)

87. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

88. Defendants City and Commissioner Kelly negligently hired, screened, retained, supervised, and trained Defendants Officer Smyth, Officer Winter, John Does #1-3, PropertyRoom, and Copart, despite the fact that they knew or should have known of the NYPD's routine failure to provide proper post-seizure notice to vehicle owners and of the lack of procedures requiring PropertyRoom and/or Copart to provide such notice. Defendants City and Commissioner Kelly, jointly and severally, failed to exercise due care and proximately caused Plaintiffs to be unlawfully deprived of their property and to suffer loss and injury.

### SIXTH CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
### BREACH OF BAILMENT CONTRACT
### (against Defendants City, PropertyRoom, and Copart)

89. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

90. Upon seizure of Plaintiffs' vehicles, the City became the bailee of the same by operation of law. Defendants PropertyRoom and/or Copart became additional constructive bailees of Plaintiffs' vehicles upon the City's transfer of the vehicles to their custody.

91. The conduct of Defendants City, PropertyRoom, and Copart, in seizing and holding Plaintiffs' vehicles without providing notice required by law and in subsequently selling Plaintiffs' vehicles at auction without notice, lawful basis or title, or compliance with New York Lien Law, was without lawful justification, and taken in unreasonable disregard of Defendants' duties under the constructive bailment contract created by their seizure of Plaintiffs' vehicles, and proximately caused Plaintiffs to be unlawfully deprived of their property and to suffer loss and injury.

### SEVENTH CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
### CONVERSION
### (against Defendants City, PropertyRoom, and Copart)

92. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

93. The conduct of Defendants City, PropertyRoom, and Copart in seizing Plaintiffs' vehicles without providing notice of the procedures Plaintiffs could follow to regain possession of their vehicles, and in subsequently selling Plaintiffs' vehicles at auction without notice, lawful

basis or title, or compliance with New York Lien Law, was without legal justification and in wrongful disregard of Plaintiffs' ownership and superior rights to possession of their vehicles. The conduct of Defendants City, PropertyRoom, and Copart constituted an unlawful conversion of Plaintiffs' vehicles, and proximately caused Plaintiffs to suffer loss and injury.

### EIGHTH CLAIM FOR RELIEF (Mr. Smith and Ms. Arniotis)
### NEGLIGENCE
### (against all Defendants)

94. Plaintiffs incorporate by reference each preceding allegation as if fully set forth herein.

95. In failing to provide Plaintiffs with notice of the procedures he could follow to regain possession of their vehicles, and in subsequently selling Plaintiffs' vehicles at auction without notice, lawful basis to title, or compliance with New York Lien Law, Defendants, jointly and severally, failed to exercise due care and direct and proximately caused Plaintiffs to be unlawfully deprived of their property and to suffer loss and injury.

### PRAYER FOR RELIEF

96. WHEREFORE, Plaintiffs pray that the Court will order the following relief jointly and severally against all Defendants:

   a. A declaration that Defendants' conduct deprived Plaintiffs of their property in violation of the Due Process guarantees of the Fourteenth Amendment to the United States Constitution and Article I of the Constitution of the State of New York;

   b. Compensatory damages in an amount to be determined at trial, representing the fair market value of Mr. Smith's and Ms. Arniotis' vehicles at the time of their seizure, in addition to appropriate pre-judgment interest, as well as, in Ms. Arniotis' case, the costs of incurring replacement license plates;

   c. Punitive or exemplary damages sufficient to punish and deter Defendants' patterns of unconstitutional and unlawful conduct in an amount to be determined at trial;

   d. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

e. Such other and further relief as the Court may deem appropriate and equitable, including injunctive and declaratory relief as required in the interests of justice.

Dated: New York, New York
September 20, 2013

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**

By: *Carlos Ramos-Mrosovsky*

Carlos Ramos-Mrosovsky
Michael Lacovara
Charles Jacob
Charline Yim

601 Lexington Avenue, 31st Floor
New York, NY 10022
Tel: (212) 277-4000
Carlos.Ramos-Mrosovsky@freshfields.com
Michael.Lacovara@freshfields.com
Charlie.Jacob@freshfields.com
Charline.Yim@freshfields.com

Mariana Kovel
THE BRONX DEFENDERS
360 East 161st Street
Bronx, New York 10451
Tel: (718) 508-3421
mollyk@bronxdefenders.org

*Attorneys for Plaintiffs*